SUE ELLEN WOOLRIDGE
Assistant Attorney General
BRUCE S. GELBER
Section Chief
Environmental Enforcement Section
Environment & Natural Resources Division
United States Department of Justice
Washington, D.C. 20044-7611
REGINA R. BELT, Trial Attorney
Environmental Enforcement Section
Environment & Natural Resources Division
United States Department of Justice
801 B Street, Suite 504
Anchorage, Alaska 99501-3657
Telephone: (907) 271-3456
Facsimile: (907) 271-5827
Electronic Mail: regina.belt@usdoj.gov

Attorneys for Plaintiff United States

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 3:06-cv-00_ _ _-_ _ _ |
| Plaintiff, | |
| v. | |
| | COMPLAINT FOR |
| ICICLE SEAFOODS, INC., and | CIVIL PENALTIES AND |
| EVENING STAR, INC., | <u>INJUNCTIVE RELIEF</u> |
| Defendants. | |
| | (33 U.S.C. § 1319) |

The United States of America, by authority of the Attorney General of the United States and through the undersigned attorneys, acting at the request of the Administrator of the United States Environmental Protection Agency ("EPA"), files this Complaint and alleges as follows:

COMPLAINT

## NATURE OF ACTION

1. This is a civil action brought pursuant to Section 309 of the Federal Water Pollution Control Act of 1972, as amended (the "Clean Water Act" or the "Act"), 33 U.S.C. § 1319, against Icicle Seafoods, Inc. and Evening Star, Inc. (collectively, "Defendants"). The United States seeks injunctive relief and the assessment of civil penalties against the Defendants for violations of Section 301 of the Act, 33 U.S.C. § 1311, or of permit conditions or limitations in a National Pollutant Discharge Elimination System ("NPDES") Permit issued by the EPA under Section 402 of the Act, 33 U.S.C. § 1342, during their operation of the M/V *Northern Victor,* a seafood processing vessel, in Udagak Bay, Alaska.

## PARTIES

2. Plaintiff is the United States of America. Authority to bring this action is vested in the Attorney General by 28 U.S.C. §§ 516 and 519 and 33 U.S.C. § 1366.

3. Each of the Defendants is, and at all times relevant to this lawsuit has been, an Alaska corporation. Defendant Evening Star, Inc. is a wholly owned subsidiary of Defendant Icicle Seafoods, Inc.

## JURISDICTION AND VENUE

4. This Court has original jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1345 because this is a civil action commenced by the United States that arises under the laws of the United States and pursuant to 28 U.S.C. § 1355 because this is an action in part for the recovery of a penalty incurred under an act of Congress.

5. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and 33 U.S.C. § 1319(b) because the events or omissions giving rise to the claims herein, or a substantial part of them, occurred in this district and because the Defendants are located or reside or are doing business in this district. Venue is also proper in this district pursuant to 28 U.S.C. § 1395(a).

6. Pursuant to Section 309(b) of the Clean Water Act, 33 U.S.C. § 1319(b), notice of the commencement of this action has been given to the State of Alaska.

## STATUTORY AND REGULATORY BACKGROUND

7. Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), makes unlawful the discharge of any pollutant by any person except as in compliance with, *inter alia*, Section 402 of the Act, 33 U.S.C. § 1342.

8. Section 402(a) of the Act, 33 U.S.C. § 1342(a), authorizes the Administrator of EPA to issue permits for the discharge of pollutants and to prescribe conditions for such permits, including conditions on data and information collection, reporting, and such other requirements as he deems necessary to carry out the provisions of the Act.

9. Section 308 of the Act, 33 U.S.C. § 1318, provides that whenever required to carry out the objective of the Act, *i.e.,* the restoration and maintenance of the chemical, physical and biological integrity of the nation's waters (33 U.S.C. § 1251(a)), the Administrator shall require the owner or operator of any point source, inter alia, to establish and maintain such records, make such reports, install, use, and maintain such monitoring equipment, and provide such other information as is reasonably required.

10. "Discharge of a pollutant" is defined by Section 502(12) of the Act, 33 U.S.C. § 1362(12), to mean "any addition of any pollutant to navigable waters from any point source."

11. "Pollutant" is defined by Section 502(6) of the Act, 33 U.S.C. § 1362(6), to include solid waste, biological materials, and industrial waste discharged to water.

12. "Navigable waters" is defined by Section 502(7) of the Act, 33 U.S.C. § 1362(7), to mean "the waters of the United States, including the territorial seas."

13. "Point source" is defined by Section 502(14) of the Act, 33 U.S.C. § 1362(14), to include "any discernible, confined and discrete conveyance, including but not limited to any pipe, . . . conduit, . . . [or] vessel or other floating craft, from which pollutants are or may be discharged."

14. "Person" is defined by Section 502(5) of the Act, 33 U.S.C. § 1362(5), to include corporations.

15. Section 309(a) and (b) of the Act, 33 U.S.C. § 1319 (a) and (b), authorizes the

Administrator of EPA to commence a civil action for appropriate relief, including a permanent or temporary injunction, whenever, on the basis of any information available to him, he finds that any person is in violation of Section 301 or Section 308 of the Act or is in violation of any permit condition or limitation implementing those Sections in a permit issued under Section 402 of the Act.

16. Section 309(d) of the Act, 33 U.S.C. § 1319(d), subjects any person who violates Section 301 of the Act, or any permit condition or limitation implementing Section 301 or Section 308 of the Act in a permit issued under Section 402 of the Act, to civil penalties.

17. On August 10, 1999, under the authority of the Act, EPA issued NPDES Permit No. AK-005286-8 ("Permit") to the Northern Victor Partnership for discharges from the M/V *Northern Victor* to Udagak Bay, Alaska. Effective September 13, 1999, the Permit authorized the discharge of wastewater, solids and residues from the processing of seafood and related support activities through outfalls 001 through 009 of the M/V *Northern Victor* in accordance with the conditions appearing in the Permit.

## PERMIT NONCOMPLIANCE

### WASTE PILE CLEANUP REQUIREMENT AND EFFLUENT LIMITATIONS

18. Remediation of Historic Seafood Waste Pile

Section IV.D. of the Permit requires that the permittee conduct a waste pile cleanup program to determine compliance with the Alaska Water Quality Standard for residues in marine waters. Specifically, during the first three years of the Permit, the permittee was to conduct operations aimed at reducing the size of an historic waste pile from a previous anchorage (waste pile "A") until the sea floor was returned to its natural state, *i.e.,* remove the waste pile within the first three years of the Permit's issuance (by September 13, 2002). Removal of waste pile "A" was not accomplished by September 13, 2002 and, to the best of the United States' knowledge, that waste pile is still in place on the sea floor of Udagak Bay.

19. Annual Waste Load Allocation

Section I.A. of the Permit contains annual limits on the amount of settleable solid seafood processing waste residues that the M/V *Northern Victor* may discharge. Discharges from the M/V

COMPLAINT - 4 -

*Northern Victor* exceeded the annual limit for the discharge of settleable seafood processing waste residues from ground wastes in 2000, 2002, and 2004.

20. Zone of Deposit

Section I.E.2. of the Permit authorizes the discharge of pollutants that exceed the Alaska water quality standard for settleable solid residues within a zone of 1.5 acres on the sea floor below the seafood processing discharge of the outfalls at the stern of the M/V *Northern Victor*. On June 9, 2004, the zone of deposit from seafood processing discharges from the M/V *Northern Victor* measured 1.98 acres on the sea floor of Udagak Bay. As of June 10, 2005, this zone of deposit (also known as "Pile B") continued to cover 1.56 acres.

21. Outfall Configuration and Floating Residue Standard

Section I.E.3. of the Permit requires that the permittee discharge its seafood processing and waste waters through outfalls in the general configuration described in the permit application and at depths of twenty feet or greater, and Section I.B.2. of the Permit prohibits the discharge of effluents which cause a foam, film, sheen, scum or other deposit to form on the surface of the receiving water, except as allowed by a State-authorized mixing zone for floating residues. On September 12, 2003, outfall 002 was located, and effluent from that outfall was being discharged, above the surface of the water. This discharge through outfall 002 created floating foam and scum on the surface waters of Udagak Bay.

**MONITORING REQUIREMENTS**

22. Outfalls 001, 008, and 009

Section I.C. of the Permit requires weekly monitoring of temperature and estimated flow of discharges in excess of 15,000 gallons per day from outfalls 001, 008, and 009. On information and belief, the discharges from outfalls 008 and 009 exceeded 15,000 gallons per day during processing in 2000, 2001, 2002 and 2003 and during that portion of the 2004 processing season that occurred prior to July. On information and belief, no monitoring of temperature and estimated flow of these outfalls was conducted during 2000, 2001, 2002, 2003, and that portion of the 2004 processing season that occurred prior to July.

COMPLAINT - 5 -

23. Outfalls 002, 003, and 004

Section I.B.4.b. of the Permit requires that the permittee monitor the flow rates of outfalls 002, 003, and 004 on a daily basis throughout the year. That Section also requires that the permittee conduct monitoring of effluent from outfalls 002, 003, and 004 during two months when processing occurred for a period of more than ten days – once per month for biochemical oxygen demand and pH and four times per month for total suspended solids and settleable solids. The M/V *Northern Victor* conducted processing for a period of more than ten days during at least two months in each of 2000, 2001, 2002, 2003, and 2004.

On information and belief, none of the monitoring of these outfalls that was required by Section I.B.4.b. of the Permit during the processing years 2000, 2001, 2002, and 2003 and during that portion of the 2004 processing season that occurred prior to July was conducted.

24. Outfalls 006 and 007

Section I.B.4.a. of the Permit requires that the permittee monitor the flow rates of discharges from outfalls 006 and 007 daily on a daily basis throughout the year. That Section also requires that the permittee conduct monitoring of effluent from outfalls 006 and 007 during four months when processing occurs for a period of more than seven days -- one per month for biochemical oxygen demand and four times per month for total suspended solids, settleable solids of process wastes, and pH. The M/V *Northern Victor* conducted processing for a period of more than seven days during at least four months in each of the years 2000, 2001, 2002, 2003, and 2004.

On information and belief, the monitoring of flow, biological oxygen demand, total suspended solids, and pH required by Section I.B.4.a. of the Permit during the 2000, 2001, and 2002 processing years was not conducted, and the monitoring of flow, biological oxygen demand, and total suspended solids required under Section I.B.4.a. of the Permit during the 2003 processing year was not conducted.

25. Visual Monitoring of Sea Surface and Shoreline

Section IV.B. of the Permit requires that the permittee conduct a visual monitoring program of the sea surface and shoreline on a daily basis during periods of operation and discharge to

COMPLAINT - 6 -

determine compliance with Alaska water quality standards for floating and suspended residues in marine waters. On information and belief, no visual monitoring program of the sea surface and shoreline during periods of the M/V *Northern Victor's* operation and discharge was conducted during processing years 2000, 2001 and 2002.

26. Sea Floor Monitoring

Section IV.A. of the Permit requires that the permittee conduct a sea floor monitoring program of the waste piles at the bow and stern of the vessel, as well as the historic waste pile, annually to determine compliance with the Alaska Waster Quality Standard for settleable residues in marine waters, which prohibits the formation of a sludge, solid or emulsion on the bottom. On information and belief, the seafloor monitoring program required by Section IV.A. of the Permit was not conducted in 2000, and the seafloor monitoring program that was conducted in 2003 did not encompass waste pile "A".

**REPORTING REQUIREMENTS**

27. Production and Discharge Report

Section III.B.3. of the Permit requires that the permittee provide in its annual report to EPA a compilation of information on production and discharge that had occurred during the previous year. This compilation is to include, *inter alia*, the amount of total suspended solids, settleable solids, and biochemical oxygen demand discharged per month and the comprehensive results of the effluent monitoring program undertaken pursuant to Section I of the Permit, *i.e.*, tabular presentations of the week, date and time of monitoring and the measurements of flow and effluent parameters. The annual report for each year was to be submitted by January 15th of the year following each year of operation and discharge under the Permit. The annual reports submitted to EPA for 2000, 2001, 2002, 2003, and 2004 failed to include one or more of the components required by Section III.B.3. of the Permit.

//

//

28. Sea Floor Monitoring Program Report

Section IV.A. of the Permit requires that the permittee submit a summary report of the sea floor monitoring survey required by that Section to EPA by January 15th of the year following the survey. The Permit recommends that this report be included with the permittee's annual report to EPA. The annual report submitted to EPA for 2000 failed to include a report of the sea floor monitoring survey required by Section IV.A. of the Permit for that year, and none was submitted to EPA by January 15, 2001. The annual report submitted to EPA for 2003 failed to include a report of the seafloor monitoring survey required by Section IV.A. of the Permit for that year for waste pile "A", and none was submitted to EPA by January 15, 2004.

29. Visual Monitoring Survey Report

Section IV.B. of the Permit requires that the permittee submit a summary report of the visual monitoring survey required by that Section to EPA by January 15th of the year following the survey. EPA recommended in the Permit that this report be included with the permittee's annual report to the agency. The annual reports submitted to EPA for 2000, 2001, and 2002 failed to include a summary report of the visual monitoring survey required by Section IV.B. of the Permit for each of these years, nor was a summary report of the visual monitoring survey required by Section IV.B. of the Permit for those years submitted separately to EPA by January 15th of the years following the year in which those surveys were to be conducted.

**CLAIMS FOR RELIEF**

30. The allegations appearing in Paragraphs 1 through 29 above are realleged and incorporated herein by reference.

31. Icicle Seafoods, Inc. ("Icicle") and Evening Star, Inc. ("Evening Star") are "persons" within the meaning of Section 502(5) of the Clean Water Act, 33 U.S.C. § 1362(5).

32. In December of 1999, Icicle assumed operation of the M/V *Northern Victor*. On information from Icicle, Evening Star may also have been an operator of the vessel at times relevant to this complaint.

COMPLAINT - 8 -

33. The waters of Udagak Bay constitute "waters of the United States" within the meaning of Section 502(7) of the Act, 33 U.S.C. § 1362(7).

34. Seafood processing wastes and other waste waters from the M/V *Northern Victor*, including transfer water, are "pollutants" within the meaning of Section 502(6) of the Act, 33 U.S.C. § 1362(6).

35. The M/V *Northern Victor* and outfalls 001 through 009 of the M/V *Northern Victor* are "point sources" within the meaning of Section 502(14) of the Act, 33 U.S.C. § 1362(14).

36. Each of the instances of noncompliance with the Permit identified in Paragraphs 18 through 29 above constitutes one or more violations of Section 301 of the Clean Water Act, 33 U.S.C. § 1311, or one or more violations of a permit condition or limitation implementing Section 301 or Section 308 of the Act in a permit issued under Section 402 of the Act. To the extent that Icicle, as operator of the M/V *Northern Victor*, has been authorized to discharge seafood processing waste and other waste waters to Udagak Bay from that vessel under the auspices of NPDES Permit No. AK-005286-8, Icicle has violated those Permit conditions or limitations. In the alternative, Icicle has discharged seafood processing waste and other waste waters to Udagak Bay from the M/V *Northern Victor* without an NPDES permit on numerous days in each of the years since its assumption of operation of the M/V *Northern Victor*. These discharges constitute violations by Icicle of Section 301 of the Act, 33 U.S.C. § 1311, on each of the days of discharge.

37. To the extent that Evening Star has operated the M/V *Northern Victor* and discharged seafood processing waste and other waste waters to Udagak Bay from the M/V *Northern Victor*, it has discharged without an NPDES permit on the days of its operation and therefore violated Section 301 of the Act, 33 U.S.C. § 1311, on each of the days of discharge. In the alternative, to the extent that Evening Star may have operated the M/V *Northern Victor* and to the extent that this operation was authorized under the auspices of NPDES Permit No. AK-005286-8, each of the instances of noncompliance with the Permit identified in Paragraphs 18 through 29 above constitutes one or more violations by Evening Star of Section 301 of the Clean Water Act, 33 U.S.C. § 1311, or a violation

of a permit condition or limitation implementing Section 301 or Section 308 of the Act in a permit issued under Section 402 of the Act.

38. Pursuant to Section 309(d) of the Act, 33 U.S.C. § 1319(d), the Federal Civil Penalties Inflation Adjustment Act of 1990, as amended by the Debt Collection Improvement Act of 1996, 28 U.S.C.A. § 2461 note, and 40 C.F.R. Part 19, Defendants are liable for civil penalties not to exceed $27,500 per day per violation for each such violation of the Act that occurred after December 16, 2000 and on or before March 15, 2004, and for civil penalties not to exceed $32,500 per day per violation for each such violation that occurred after March 15, 2004.

39. Pursuant to Section 309(b) of the Act, 33 U.S.C. § 1319(b), Defendants are liable to have this court restrain such violations and require compliance.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff United States of America, prays that this Court:

A. Issue a permanent injunction restraining Icicle Seafoods, Inc. and Evening Star, Inc. from discharging pollutants into navigable waters from the M/V *Northern Victor* except in compliance with an applicable NPDES permit and requiring them to comply with the terms and limitations of any NPDES permit.

B. Order Icicle Seafoods, Inc. and Evening Star, Inc. to pay civil penalties of up to $27,500 per day for each of their violations of the Clean Water Act that occurred after December 16, 2000 and on or before March 15, 2004 and civil penalties of up to $32,500 per day for each of their violations of the Clean Water Act that occurred after March 15, 2004.

C. To the extent that Defendants or either of them has been authorized to discharge under the authority of NPDES Permit No. AK-005286-8, issue an injunction requiring Defendant(s) to:

> 1. conduct a cleanup of the historic seafood waste pile in Udagak Bay (Pile "A") that returns the sea floor covered by that waste pile to its natural state; and
>
> 2. Conduct a cleanup of the seafood waste pile in Udagak Bay known as Pile "B" that returns to its natural state that area of the sea floor covered by the waste pile that

exceeds 1.5 acres.

D. Grant such other and further relief as may be just and proper and as the public interest and the equities of the case may require.

Respectfully submitted,

s/: SUE ELLEN WOOLDRIDGE
Assistant Attorney General
Environment & Natural Resources Division
United States Department of Justice
Washington, D.C. 20530


s/: REGINA R. BELT
Trial Attorney
Environmental Enforcement Section
Environment & Natural Resources Division
United States Department of Justice
801 B Street Suite 504
Anchorage, Alaska 99501-3657
Telephone: (907) 271-3456
Facsimile: (907) 271-5827
Electronic Mail: regina.belt@usdoj.gov

Attorneys for Plaintiff United States


OF COUNSEL:

CARA STEINER-RILEY
Assistant Regional Counsel
U.S. Environmental Protection Agency
Region 10 – ORC 158
1200 Sixth Avenue
Seattle, Washington 98101

COMPLAINT - 11 -